IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Peter Potrykus,                                    Case No. 3:09CV744

         Plaintiff

      v.                                            ORDER

CSX Transportation, Inc.,

         Defendant

This is a case under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq*., in which plaintiff Peter Potrykus claims to have suffered cumulative trauma to his knee in the course of his employment with defendant CSX Transportation, Inc. (CSX), due to defendant's negligence.

Jurisdiction is proper under 28 U.S.C. § 1331. Pending is defendant's motion for summary judgment. [Doc. 31]. For the reasons discussed below, the motion shall be granted in part and denied in part.

**Background**

Defendant has employed plaintiff since May, 1997, as a carman. Carmen work either as car inspectors or in the car shop. Plaintiff has generally worked as a car inspector since 2001, a position that is "a little easier on you than the car shop." [Doc. 32-3, at 9].

As part of their duties, carmen must "stoop/bend/kneel/crouch/crawl" and work in "cramped, confined, enclosed or awkward places." [*Id*. at 16].

Plaintiff testified that there were "tripping hazards" at his work site, such as "[c]hunks of coal [and] scrap steel" and that "at times" he "stumbled and hurt [his] knee." [*Id*. at 10]. In addition, plaintiff testified that defendant did not use the "small roller [on site] to roll the ballast to make

better walking conditions" and that the defendant "brought [the roller] to the yard . . . to smooth out ballast." [*Id*.].

Plaintiff testified that his symptoms started in October, 2005. In June, 2006, plaintiff learned of a meniscus tear in his right knee. He had surgery to repair the injury in July, 2006. He did not return to work until September, 2006. Plaintiff's physician then released him to resume working without restrictions. Since his return "he has not missed work because of his knee." [Doc. 31, at 3].

Plaintiff filed suit on August 6, 2008, in the Eastern District of Pennsylvania. On February 24, 2009, that court transferred the case here. [Doc. 20].

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Defendant argues that the Federal Railway Safety Act (FRSA) preempts all plaintiff's negligence claims under the FELA. In the alternative, defendant argues that plaintiff has failed to produce any evidence of negligence. Plaintiff disagrees.

The FELA provides that employees of common carrier railroads may recover for work-related injuries caused in whole or in part by a railroad-employer's negligence. *See* 45 U.S.C. §§ 51-60.

Congress enacted the FELA as a "broad remedial statute" to assist railroad employees when an employer's negligence causes injury. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987). The FELA is a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Miss. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958). I am to read the Act liberally in favor of injured railroad employees. *Urie v. Thompson*, 337 U.S. 163, 180 (1949).

To assert a *prima facie* case under the FELA, plaintiff "must prove that: 1) he was injured within the scope of his employment; 2) his employment was in furtherance of [defendant's] interstate transportation business; 3) [defendant] was negligent; and 4) [defendant's] negligence played some part in causing the injury for which he seeks compensation under FELA." *Van Gorder v. Grand Truck W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007).

A plaintiff must "present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 810 (6th Cir. 1996), *abrogated in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000). "And no matter how slight the causal link between the employer's negligent act and the injury, recovery is allowed." *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987) (citing *Tennant v. Peoria & Pekin Union Ry. Co.*, 312 U.S. 29, 64 (1943)).

As defendant correctly asserts, plaintiff must show "that the railroad was negligent and that such negligence caused his condition." [Doc. 33, at 5]. *See Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990) (noting that a FELA plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation") (quoting *Robert*, *supra*, 832 F.2d at 6).

A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe. *Tiller v. Atl. C.L.R. Co.*, 318 U.S. 54, 67 (1943).

### I. Preemption of Ballast Claims

"This case requires [me] to examine the interplay of two federal statutes, both of which were designed to promote railway safety." *Nickels v. Grand Trunk W. R.R., Inc.,* 560 F.3d 426, 429 (6th Cir. 2009).

The FRSA seeks "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (quoting 49 U.S.C. § 20101)). It "authorizes the Secretary of Transportation (Secretary) to 'prescribe

regulations and issue orders for every area of railroad safety.'" *Nickels*, *supra*, 560 F.3d at 429 (quoting 49 U.S.C. § 20103(a)).

The FRSA's preemption provision states that "[l]aws, regulations, and orders related to railroad safety . . . shall be uniform to the extent practicable." *Id.* (quoting 49 U.S.C. § 20106(a)(1)). It allows a state to "adopt or continue in force a law, regulation or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." *Id.* (quoting 49 U.S.C. § 20106(a)(2)).

"A state-law negligence action is 'covered' and therefore preempted if the FRSA regulation 'substantially subsumes' the subject matter of the suit." *Id.* (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

While the provision does not address federal safety standards, the Sixth Circuit has held that a plaintiff's "claims are precluded by the FRSA if they would have been preempted if brought by a non-employee under state law." *Id.* at 430.

With regard to ballast, the Secretary has issued the following regulation:

> Unless it is otherwise structurally supported, all track shall be supported by material which will- (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade; (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails; (c) Provide adequate drainage for the track; and (d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103.

**A. Ballast Size**

Defendant correctly argues that the FRSA preempts plaintiff's claims with respect to ballast size. *Nickels*, *supra*, 560 F.3d at 428 (holding that § 213.103 "covers the issue of size and precludes the plaintiff['s] FELA claims").[1] Defendant's motion for summary judgment on plaintiff's claims of improper ballast size is therefore granted.

### B. Ballast Maintenance

Defendant's reliance on *Nickels* with regard to plaintiff's allegations that the ballast has been improperly maintained, however, is misplaced. Section 213.103 "effectively narrow[s] the universe of material the railroad may use for a given situation. The regulation thus determines what is a reasonable ballast composition and size." *Nickels*, *supra*, 560 F.3d at 431.

Regulating the *type* of material used to support the track is different than regulating the *maintenance* of the material itself. For example, mainline ballast is naturally "more strenuous and provides for uneven footing[,]" *id.* at 428, but § 213.103 permits railroads to use it because it meets all four requirements identified by the regulation.

Just because a type of ballast can "maintain proper track crosslevel, surface, and alinement[,]" § 213.103, however, does not mean that the railroad has, for example, filled in holes or graded the ballast, omissions which would exacerbate the ballast's natural, uneven conformation.

Plaintiff testified that defendant did not use the "small roller [on site] to roll the ballast to make better walking conditions" and that defendant "brought [the roller] to the yard . . . to smooth out ballast." [Doc. 32-3, at 10].

---

[1] Plaintiff cites *Grogg v. CSX Transp., Inc.,* 659 F. Supp. 2d 998, 1016 (N.D. Ind. 2009), and *Kelly v. Ill. Cent. RR. Co.*, 2010 WL 271959, *8 (C.D. Ill.), for support that the FRSA does not preempt his ballast claims. His reliance is flawed: the Sixth Circuit's holding in *Nickels* is controlling and district courts from the Seventh Circuit have no precedential effect here. I note further that the Judge in *Grogg*, *supra*, 659 F. Supp. 2d at 1015, commented that "[i]f the present case were in the Sixth Circuit, [*Nickels*] would likely carry the day for CSX."

If giving full credence to plaintiff's contentions, a reasonable jury could conclude that defendant negligently maintained the ballast in breach of its duty to provide a reasonably safe workplace. *Van Gorder*, *supra*, 509 F.3d at 269. Defendant's motion for summary judgment on these grounds is therefore denied.

## II. Tripping Hazards

Aside from his allegations regarding ballast, plaintiff also testified that there were "tripping hazards" at his work site, such as "[c]hunks of coal [and] scrap steel" and that "at times" he "stumbled and hurt [his] knee." [Doc. 32-3, at 10].

A reasonable jury could conclude that these tripping hazards show defendant negligently maintained walking surfaces in breach of its duty to provide a reasonably safe workplace. *Van Gorder*, *supra*, 509 F.3d at 269. Defendant's motion for summary judgment on these grounds is therefore also denied.

## III. Workplace Conditions

Plaintiff has also provided medical evidence that his activities as a carman "have, if not completely caused his right knee injuries, aggravated and contributed to his right knee injuries." [Doc. 32-3, at 13].

Plaintiff, however, may not recover simply because he was injured in the course of his employment. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) ("FELA does not make the employer the insurer of the safety of [its] employees while they are on duty. The basis of [its] liability is negligence, not the fact that injuries occur.").

Plaintiff similarly may not recover simply because of conditions encountered as part of his job requirements. *See Stevens v. Bangor & Aroostook R. Co.*, 97 F.3d 594, 598 (1st Cir. 1996)

(stating "[t]he employer's duty to maintain a safe workplace does not require all dangers to be eradicated, but it does demand the elimination of those that can reasonably be avoided *in light of the normal requirements* of the job" (emphasis added)).

Rather, a railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe. *Tiller*, *supra*, 318 U.S. at 67; *Aparicio*, *supra*, 84 F.3d at 811 (stating that "a railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect its employees"); *accord Stevens*, *supra*, 97 F.3d at 598.

As the First Circuit explained: "[r]easonable care must be reasonable in light of the normal requirements of the job. A yardman dealing with moving cars cannot expect the same safety as a clerical worker in a ticket office." *Conway v. Consol. Rail Corp.*, 720 F.2d 221, 223 (1st Cir. 1983). In *Conway*, a conductor was helping a passenger when the passenger dropped a suitcase and injured the conductor. The court explained that handling luggage was simply "part of the work" of a conductor and thus the plaintiff-conductor could not show negligence on the railroad's behalf. *Id.*

Defendant likewise correctly contends that plaintiff cannot recover simply by showing that his injury is in some way related to his job, *see Gottschall*, *supra*, 512 U.S. at 543, or merely because his job as a carman required "bending, crawling, kneeling, squatting, climbing and walking on ballast." [Doc. 1, at 8]. *See Stevens*, *supra*, 97 F.3d at 598 (noting that an employer's duty is only to eliminate those dangers "that can reasonably be avoided *in light of the normal requirements of the job*" (emphasis added)).

To recover under FELA, plaintiff must present some evidence that the railroad negligently required him to perform these tasks. Plaintiff has failed to do so.[2] To the extent that plaintiff alleges the cumulative trauma he suffered was due to these tasks, they are merely "part of the work." *Conway*, *supra*, 720 F.3d at 223. Defendant's motion for summary judgment on the grounds that plaintiff has failed to produce evidence that it was negligent for defendant to require plaintiff to perform his tasks as a carman is therefore granted.

## Conclusion

It is, therefore,

ORDERED THAT: Defendant's motion for summary judgment [Doc. 31] be, and the same hereby is granted with regard to plaintiff's claims re. use of improper ballast and general working conditions (bending, stooping, etc.) and denied with regard to his claims of improper maintenance of ballast and allowing tripping hazards to accumulate.

So ordered.

s/James G. Carr
U.S. District Court Judge

---

[2] Plaintiff, in his answer to an interrogatory, states that "[d]efendant decreased manpower over the course of his career that resulted in increased cumulative trauma to his lower extremities." [Doc. 35, at 2]. While plaintiff has presented evidence of his job duties and evidence that those duties contributed to, if not entirely caused, his injury, "the F.E.L.A. is not a workers' compensation act." *Harris v. Ill. Cent. RR. Co.*, 58 F.3d 1140, 1142 (6th Cir. 1995). Plaintiff's evidence, when accepted as true, does not establish that defendant breached its "duty to provide all employees with a reasonably safe workplace." *Van Gorder*, *supra*, 509 F.3d at 269; *see also McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (M.D. Tenn 1995) (rejecting an argument that "the use of more men on the job would have prevented injury"), *aff'd* 56 F.3d 64 (6th Cir. 1995); *Coomer v. CSX Transp., Inc.*, 1996 WL 525433, *2 (6th Cir.) (unpublished table disposition) (holding "there is no evidence that absence of additional workers proximately caused plaintiff's injury").